Chief Justice Robertson
delivered the Opinion of the Court.
Patrick Maxcey — having, by the execution of his own bond and mortgage on regí éstate,' discharged a judgment obtained by the Bank of the United States against one T. K. Byrne as principal, and himself and Richard T. Robertson as sureties, in an obligation for nearly three thousand dollars — recovered a judgment, upon motion, against his co-surety for one half of the aggregate of principal, interest and costs due to the Bank at the time of satisfaction. And, in revising this latter'judgment, we have to decide whether — upon the facts just stated, together with the additional facts, that satisfaction of the joint judgment had been entered on the record thereof, and that a witness, whose testimony we deem altogether sufficient to prove such a fact as between co-sureties, testified that Byrne, the principal, was insolvent — Maxcey was entitled to recover, in the statutory procedure by motion, the sum adjudged in his favor, or to recover any thing.
The second section of an act of 1798, (2 Slat. Law, 1437,) authorizes a motion,by a surety; or sureties, against a co-surety, or sureties, whenever a judgment shall have been rendered against the former alone, and the principal obligor shall be insolvent.
The third section of an act of 1812 authorizes a motion by a joint obligor or co-surety, who shall have ‘•‘paid,, the full' amount” of a joint judgment, for the purpose of recovering from any and every associate,co-obligor or co-surety, “the proportion of the judgment and costs which (he) ought to have paid, together with legal interest thereon.”
Under § 3 of the act of 1812, concerning securities, whenever a judgment is recovered against several sureties, without theprincipal, and one of the sureties has paid the debt, a motion • will lie in his favor, against a co surety, for the share of the latter, wbe ther the principal is solvent or insolvent; — and, where there is a judgment against the principal and sureties, and the principal is insolvent, either of the sureties, having paid off the judgment, may compel contribution from a co-surety, who, as the judgment is against him also, ought to have paid his e-qua] share.
By the ancient wS noltapikd promise of con-co suretíesT10 m courts of equity only, could they have the bur den distributed. But now, since the principles of the civil law, as practised upon by courts of equity, in this respect, have been adopted as part of the common law, it does imply such promises — which may be enforced by actions of assumpsit. And herein, courts of law, and of equity, hava concurrent jurisdiction. But—
And these being the only statutory provisions respecting motions by sureties against co-sureties, it is evident that the last enactment is the only one that can be applied to the motion in this case. The only doubt which could exist respecting the application of this section, arises from the fact that the judgment was rendered against the principal, as well as his sureties, and this enactment does not expressly provide, as the other does, for a motion, in sueh a case,,by a surety against a co-surety when the principal obligor shall be insovent; unless it should be understood' as authorizing a motion, against a co-surety even when the principal obligor, whether a party to the judgment or not, shall be solvent, or unless the words — “which sueh co-surety — ought to have paid” — should be construed as. applying to a nont contributing co-surety whenever the principal obligor is insolvent. Our construction of the legislative intent, in the enactment of this section, is — (1) that, whether , the principal obligor be solvent or insolvent, a motion may be sustained against a surety by his co-surety, who has paid the amount of a judgment rendered against the sureties only; and (2) that, when even an insolvent principal is a party to the judgment, a surety who has paid the amount of it, may, by motion, compel a co-surety to contribute, if they were also parties to the judgment; because then, and then only, the surety who had contributed nothing bought to have paid” — his equal share.
We are consequently of the opinion that a motion was an appropriate remedy in this case, if, in the legislative sense, the amount of the judgment in favor of the Bank was “paid” by the plaintiff in the motion.
According to the ancient common law, there was no implied promise between cosureties to contribute to each other, for a common liability; and courts of equity alone, proceeding on the just principle recognized by the civil law, that all who are jointly liable should equally share . , , ti c the burthen, compelled contribution. But, from the *103 equitable duty thus established, the modern common law implies a promise among co-sureties to make contribution; and hence now an action of assumpsit may be maintained for enforcing such an implied promise. As between co-sureties, therefore, courts of equity and courts of law have a concurrent common law jurisdiction; with this essential difference in effect, however— •that if, when there are more than two-co-sureties, any ■one of them be insolvent, the whole burthen is distributed, by a court of equity, among those who are solvent, 'because equity acts on the principle of equality just suggested; but a court of law, acting on an implied undertaking, by each to each, to contribute his distributive ratio according to the number of sureties who were jointly ■bound, will not distribute among the solvent, the portions of the insolvent.
At law, contribution among sureties, is according to the number bound; in equity, the insolvent are excluded, and the burden made equal among those only who can. pay.
Indebitatus assumpsit lies only upon a promise to pay money, or its equivalent; & where one of several sureties has satisfied the debt, without advancing any money, or any thing equivalent, the law does not imply any promise by a co surety, to pay money for contribution: the only remfedy at law is by a special action on the case,in which the recovery will he according to the value of the property paid & received in satisfaction of the debt. But where a surety has given his own separate obligation which is received as a good and valid payment, by which the security debt is extinguished, it seems that he may maintain indebitatus assumpsit against a co-surety for contribution. And held that, where one of two sureties whose principal was insolvent, had satisfied the judgment which the creditor had recovered against them and the •principal, by giving his own bond and mortgage for the amount, thereby ^extinguishing the joint liability, he may sustain a motion under the act of 1812, against his co surety for his half of the sum thus paid.
As indebitatus assumpsit can be maintained only on a promise, express or implied,' to pay money or its equivalent, and as the law will not imply a promise by a surety to pay money to a co-surety who had not actually discharged their common liability, or some portion of it, •by. advancing money or its equivalent — a special action on the case is the only common law remedy in a court of law for contribution, when the obligation has been discharged by that which cannot be considered as money •either actually or virtually. And,.in a court of law, as well as in a court of equity, the-rate of contribution, is determined by the money value of what the suing surety has advanced, whenever a higher conventional value has been allowed by the obligee from motives of bounty ■or apprehension. The right to contribution depends, not on the fact of exoneration merely, but chiefly on the fact that the exonerating surety has parted with something of'value. Hence it has been doubted whether he who has discharged an obligation by only substituting *104 his own individual bond, is, before the payment of it, entitled, by the common law, to any contribution from a co-surety.' ,It seems to us, however, that there should be no doubt that, as the substituted liability must be of some value, a special action on the case might be maintained^ But there may be at least a plausible doubt whether, in such a case, indebitatus assumpsit would be maintainable, and also whether, if it would be, the nominal amount of the substituted obligation would necessarily be the legal criterion for adjusting the ratio of contribution. In the case of Cumming vs. Hackley (8 Johnson’s Rep. 158,) the Supreme Court of New York seemed to think that, in such a case, indebitatus assumpsit would not lie. But, in the subsequent case of Witherby vs. Mann (11 lb. 518,) the same court decided that a substituted negotiable note was such a payment as would entitle the surety who gave it to maintain indebitatus as•sumpsit against a cO-surety for contribution, and that the’ amount of the note should regulate- that of contribution. This decision was given on the twofold ground, (1) that the negotiable note was quasi money, and (2) that, as the drawer would be liable to the endorsee, he might be subjected to a double liability, unless the note should be deemed a payment of the bond for which it was given.
The latter ground, however, tends to show only that the negotiable note should be deemed to have been an extinguishment of the bond, and that therefore the latter had been discharged by the drawer of the note. And the other ground leaves undecided the question whether the execution and acceptance of one bond in discharge of another bond or a judgment, would sustain indebitatus assumpsit. It seems to us, however, that the more important and decisive question should be whether, in fact and in law, the bond had discharged the pre-existing liability. And if it did, as it certainly may have done, we are disposed to think that indebitatus assumpsit might have been maintained by the surety who, having thus discharged, had virtually, as we are inclined to think, paid the original joint debt. As to whether money or its equivalent had been paid or not, we cannot discriminate essentially between a negotiable note and a simple bond *105 for money; for if the former should be deemed equivalent to money because it was given for money and received as money, the latter should, for the same reasons, be entitled to the same constructive character.
In Gray vs. Gray, 2 J. J. Marshall, 21, this Court decided that a purchaser of land who had surrendered to the vendor, in payment of the price, a bond he held on him, might, after a rescission of the'contract, recover the amount of the bond in an action of indebitatus assumpsit; because, it being for money, and having been received as money, the surrender should be considered equivalent to the formal payment of it by the obligor, and a formal restitution of the same money by the obligor, in payment for the land.
According to the civil law, a novation entitled the surety making it to sue the principal obligor for the amount of the substituted obligation. Pothier, by Evans, 277, part 2, C. 6, S. 7.
In 3 JV*. Hamp. Rep. 366, and Cornwall vs. Gould, 4 Pickeries Massachusetts Rep. 444, it was decided that a surety who had extinguished the debt by giving his separate promissory note for it, might maintain indebitatus assumpsit against his co-surety. .
And in Stone vs. Porter, 4 Dana, 207, this Court, after deciding that a payment of Bank notes by a surety, would authorize indebitatus assumpsit, said, arguendo, that, even if “individual notes or bills” had been received as money by the creditor in discharge of his demand, the surety might have maintained indebitatus assumpsit against his principal.
The foregoing doctrines and decisions seem to authorize the,conclusion that, as between co-sureties, a discharge of their co-obligation by the acceptance, in lieu of it, of the "bond of one of them should be deemed a payment in money or its equivalent. And consequently, to be consistent in principle, the law must presume that the substituted bond was, from the time it was payable or bore interest, equal to its nominal amount in money. The possibility of non-payment, or of inability to pay, should have no decisive influence on the extent to which the obligor should be entitled to contribution from a co- *106 surety — unless it should appear or be presumed that the obligor intended never to enforce the substituted bond, or accepted it from an insolvent party without consid- ■ ering it as the equivalent of the original debt. Prima facie, it should be equivalent; apd therefore, a co-surety should have no more right to object to contributing his ratable proportion of. the amount of the substituted bond, on the ground that it may never be paid, than he would have had if the obligor had actually paid, in money, the whole amount of the joint debt, and then had borrowed the same money, and given his bond in consideration of the loan; or than if he had paid the joint debt with money borrowed from a stranger, and which he might possibly never repay; for, in each of these hypothetical cases, the payment of the joint debt will, in fact, have cost nothing, if the borrowed money advanced in discharge of it should never be paid.
But the law will not speculate on such remote contingencies. On the contrary, it will consider the substituted bond as equivalent to the amount of it in money, because it was so considered by the parties to it, and may be, and probably is, a full equivalent.
As, therefore, it appears in this case, that the judgment was actually satisfied by the bond and mortgage which ■were given in lieu of it by the defendant in error, and the plaintiff in error was thereby exonerated ás a co-surety, there has, in our opinion, been such a payment as should, according to the objects of the act of 1812, authorize the judgment rendered up'on motion, in the Circuit Court. As the principal was insolvent, it was the duty of the plaintiff in error to contribute to the satisfaction of the debt which has, in judgment of law, been paid altogether by his co-surety; and having failed to do so, it is our opinion that the statute authorized the proceeding and judgment now complained of.
Wherefore, it is considered that the judgment of the ■Circuit Court be affirmed.