CASE 32—PETITION ORDINARY—NOVEMBER 12.

# Greene v. Anderson, Etc.

APPEAL FROM MONTGOMERY CIRCUIT COUR_

1. CONTRIBUTION—JOINT OBLIGORS.—Where four parties execute a note, two of them thinking they were all joint obligors therein, upon the trial of the issue in an action for contribution, as to whether one of them was principal, or merely surety, the verdict of the jury that he was a principal will not be disturbed even if there was an understanding or agreement between him and another obligor that he was only a surety thereon; the two obligors who took up the note being in ignorance of such an agreement, would not be bound by it.

2. SAME.—Joint obligors who have discharged the joint obligation by the execution of a new note which is accepted by the holder thereof, are entitled to contribution from their co-obligors, just as if the joint obligation had been discharged by a payment of cash.

3. SAME.—The parties to the joint obligation were only principals as between themselves to the extent of the money severally received by them from the original loan, and the solvent obligors will be required to contribute as to the portion of an insolvent obligor only in proportion to the amounts received by them.

4. PRACTICE IN CIVIL CASES.—An excessive judgment brought about by an erroneous instruction in the lower court will not be reversed by this court where the amount in excess was remitted in the lower court pending a motion for a new trial.

O'REAR & BIGSTAFF AND H. R. PREWITT FOR APPELLANT.

1. The preponderence of the evidence shows conclusively that appellant only signed the note as surety.

2. The right of contribution as between co-obligors does not grow out of a contract relation, but is an equity. The liability of the co-obligor does not grow out of the fact that he has been discharged from liability because his co-obligors have taken up the note, but out of the fact that they have actually paid the same, or more than their proportion thereof, and therefore in equity ought to be reimbursed or made whole.

TYLER & APPERSON FOR APPELLEES.

1. This court will not reverse on the evidence unless it is palpably and flagrantly against the evidence. Talbott v. Talbott, &c., 2 J. J. M., 6; Johnson v. Davenport, 3 J. J. M., 391; Fitzgerald v. Baker, 4 J. J. M., 399; Creel v. Bell & Co., 2 J. J. M., 310; Kirk v. Kirk, 3 Dana, 54; Danfield v. Bruton, 7 B. M., 109; Moore v. Foster, 10 B. M., 256.

2. Any arrangement between James Greene and appellant by which he was to sign the note only as surety was not brought home to the appellees and they could not have been bound thereby.

3. The execution of a new note by a part of the obligors in the old one is a complete novation which substitutes the new debt for the old one, and has the same effect as if the obligors had actually paid off the old debt, and then reborrowed the money from the payee and executed a new note for same. Smith v. Young, 11 Bush, 399; Robertson v. Maxey, 6 Dana, 101; Pomeroy's Equity, vol. 3, sec. 1408; Stubbins v. Mitchell, 82 Ky., 535; Chenault v. Bush, 84 Ky., 528.

C. P. CHENAULT IN PETITION FOR REHEARING.

1. The erroneous instruction was not entirely cured by the remission on the record; according to the opinion appellant should only have been required to contribute one-sixth of the loss sustained by the insolvency of James Greene, and according to the statement of appellee's counsel he was required to contribute one-fifth thereof.

2. The court can never say with certainty whether the admission of incompetent evidence was prejudicial, and from the nature of things can not determine whether the jury made up its verdict from the competent or the incompetent testimony, or how far it may have been influenced by the incompetent evidence.

3. The bank could not recover from appellant on the original note

after having permitted the same to be renewed several times
without his name thereon, and to say that appellees may take
up the note by executing their own to the bank, and the bank
accepting the same, and that then they may require appellant
to contribute so that they may pay the same to the bank on their
new note, is to permit the bank to do indirectly what it could
not do directly, viz.: to hold appellant liable on the note.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

In January, 1890, M. W. Anderson, W. T. Tyler, James
Greene and H. K. Greene executed their joint obligation to
the Mt. Sterling National Bank for the sum of $8,726.66,
and the proceeds thereof, viz., the sum of $8,500, was divided
and received by the obligors as follows; M. W. Anderson,
$2,500; W. T. Tyler, $2,500; James Greene, $2,500 and H. K.
Greene, $1,000. This note was renewed to the bank by all
the obligors for the original amount, the interest being paid
at the date of the renewal, certainly as many as three times.
In the execution of these renewals the obligors did not go
together and all sign the note at the same time, but it was
the custom for each of them to call at the bank as conveni-
ent, and when the note was signed by all of them the last
signer would take up the preceding obligation.

Upon the renewal of this note on the 14th day of June,
1892, James Greene (who was the father of H. K. Greene)
was the last signer, and he took up the preceding renewal
without the knowledge or consent of the plaintiffs; that the
signature of H. K. Greene had not been attached to the new
obligation, and H. K. Greene thereafter failed and refused
to sign any subsequent renewal of the note. On January
11, 1894, the plaintiffs, Tyler and Anderson were compelled
to, and did, take up and satisfy the whole of the debt, with
accrued interest, amounting, as of that date, to the sum of

$9,127.86, and they instituted this suit against appellant, H. K. Greene, to recover the $1,000 received by him from the proceeds of the original note, and also his proportion of the part which was due by James Greene, his father, the latter having become insolvent. Defendant, H. K. Greene, resisted 'judgment because, he says, he was only a surety upon the original obligation and was not interested as a principal in borrowing the money, and that by the acceptance of the renewal note by the bank, without his name being attached thereto, he had been discharged from all liability thereon.

Upon the trial of the case the court instructed the jury, first, "that if they believed from the evidence that the defendant, H. K. Greene, was one of the principals in the original note executed to the bank by him, James Greene, and the plaintiffs, or any renewal thereof, and they further believe from the evidence that the plaintiffs, Anderson and Tyler, prior to the institution of this action, took up or paid off the whole of said debt, the jury should find for the plaintiffs such sums or proportion of the amount so paid or taken up by them as they believe from the evidence H. K. Greene was originally bound or liable for, as between the obligors on said debt, on his own behalf and any interest that may have accrued thereon; they should also find for the plaintiffs one-third of such sum, and accrued interest thereon, as they may believe from the evidence plaintiffs have paid or taken up for which James Greene was originally bound or liable." And by the third instruction they were told that if they believed from the evidence that H. K. Greene was only a surety on the note, they should find for the defendant Greene, to which defendant excepted. The

trial resulted in a verdict and judgment for plaintiffs for the
sum of $1,968.74, with interest from the 11th day of January,
1894, this sum being the $1,000, with accrued interest, which
appellant, H. K. Greene, had himself received from the pro-
ceeds of the original note, and for one-third of the $2,500, and
accrued interest thereon, which James Greene had received
from the proceeds of the original note.

At a subsequent day of the term plaintiffs remitted and re-
leased $447.44 of the principal of their judgment, admitting
that appellant was liable only to the extent of one-sixth of
the amount for which James Greene, the insolvent obligor,
was liable, instead of one-third. The court thereupon over-
ruled the motion of the defendant for a new trial and he pros-
ecutes this appeal, and seeks a reversal of the judgment
against him, first, upon the ground that the verdict is pal-
pably against the weight of the evidence; second, because,
it is insisted that appellees are not entitled to recover any
sum from appellant for the reason that, at the institution of
this action, they had not actually paid the joint debt, but
had only taken it up by the execution of a new note to the
bank; and third, because of the admission of incompetent
testimony against him upon the trial of the case.

With regard to the first ground, this court has, in repeated
opinions, announced as a rule that the verdict of a jury upon
a question of fact will not be reversed because of a mere pre-
ponderance of evidence in favor of appellant, but
that it must be palpably and flagrantly wrong be-
fore it will be disturbed. And after a careful read-
ing of the bill of exceptions in this case, we do not
feel authorized to say that the verdict is against the pre-

ponderance of the proof. The testimony conduces to show that the plaintiffs, Anderson and Tyler, and James Greene agreed with each other to borrow $2,500 each upon their joint obligation from the Mt. Sterling National Bank, the money to be used in the purchase of stock in the Security Land and Investment Co.; that at the date of the original agreement appellant was not present; that when they went to get the money on a subsequent day, defendant, James Greene (the father of H. K. Greene) stated to the plaintiffs that his son, H. K. Greene, wanted $1,000, and asked that the note be sufficiently increased as to include that amount and that "Harvey would sign it," which was accordingly done; that the note was signed by the plaintiffs and the defendant, James Greene, and subsequently by Harvey Greene; that the proceeds of this note, viz., $8,500, was divided, of which plaintiffs got $2,500 each, James Greene $2,500 and Harvey Greene $1,000; that all this money was placed to the credit of Greene & Co., and was by the secretary of that company checked out to pay subscriptions of the plaintiffs and defendants to the capital stock of the Security Land and Investment Co. of Mt. Sterling Ky., appellant H. K. Greene receiving a certificate for ten shares of the capital stock, M. W. Anderson, twenty-five shares; James Greene, twenty-five shares, and W. T. Tyler, twenty-five shares; that this stock was accepted by the appellant, and that he signed several of the renewal notes.

Appellant testifies that he signed his name as security at the instance of his father, James Greene, who was indebted to him in the sum of $1,000 or $1,500, and who used his portion of the money to pay for the ten shares of the capital

stock subscribed for him in the land and investment company
and made him a present of it.   There is no pretense that
either of the plaintiffs ever asked him to sign the note as
surety, and the testimony of the cashier of the bank shows
that he did not require any security on the note, and that he
did not attach any special importance to the name of H. K.
Greene.   And even if, as contended, there was an agreement
between appellant and his father that he was to sign this
note only as security, we do not think that plaintiffs would
be bound by it as there is no evidence that they ever had
any information regarding this agreement; and the conduct
of appellant in accepting and appropriating his proportion
of the money derived from the proceeds of the note was
certainly an important fact which tends to support the con-
clusion arrived at by the jury, that he was a principal in the
original transaction and not a surety, and the verdict of the
jury will not be disturbed on this ground.

Counsel for appellant argues plausibly that there can be
no recovery by appellees because they have not actually paid
in money the joint obligation, but that they have only taken
it up by executing new notes, which he insists is not a pay-
ment, and that the right to contribution depends not on the
fact of exoneration merely, but also upon the additional fact
that the exonerating security has parted with something of
value.   This identical question has been frequently passed
upon by the courts of last resort in many other States of the
Union as well as this court, and, so far as we have been able
to ascertain, their conclusions have been uniformly against
the contention of counsel.   Such was the ruling of this court
in the cases of Gray v. Gray, 2 J. J. Mar., 21; Stone v. Por-

ter, 4 Dana, 207; Robinson v. Maxey, 6 Dana, 101; Atkinson v. Stewart, 2 B. Monroe, 348, and Stubbins v. Mitchell, 82 Ky., 538, the court saying in the last-named case: "It should now be considered settled, and in our opinion correctly settled, that as between co-sureties a discharge of their obligation by the acceptance in lieu of it by the creditor of the note of one of them must be deemed a payment in money in the meaning of the statute." And by section 4667 of the Kentucky Statutes co-obligors and co-contractors, as between each other, are given the full benefit of all the remedies of a surety who pays the whole or any part of a debt or liability for which he is bound jointly with other so-securities, in case of the insolvency of one of the co-securities. We, therefore, conclude that as the bank had accepted the obligation of appellees in full satisfaction of the demand due by all the obligors, it is equivalent to, and will be considered as, a payment in cash.

It does not appear to us that appellant has been prejudiced by the testimony of appellee Tyler. He was a principal on the debt to the bank, and as the question as to whether appellant signed the note as principal or surety is one of fact as well as of law, it would seem that Tyler was competent to testify on this point, if any one was. Nor do we think any error prejudicial to the substantial rights of the defendant accrued from the admission of the statement of his father that at the time the note was originally signed by plaintiffs and himself, that "Harvey wanted $1,000,' as appellant subsequently ratified this statement by signing the note and accepting the money.

But we think there can be no question that so much of the

first instruction as directed the jury to "find for plaintiffs one-third of such sum and accrued interest thereon as they may believe from the evidence plaintiffs have paid or taken up, for which James Greene was originally bound or liable as between the obligors on said debt, "is erroneous and prejudicial to appellant because, if the parties, as found by the jury, were all principals on the note to the bank, they were only principals to the extent of the money severally received by them. The benefit resulting to the obligors from borrowing the money was in proportion to the sums they severally received out of the amount borrowed, and, therefore, the loss occasioned by the insolvency of either obligor should be borne by the solvent partners in the same proportion—excluding the insolvent ones—as they received the benefit. (Pothier on Obligations, volume 1, page 174; Kincaid v. Hocker, 7 J. J. Marshall, 333, and Breckinridge v. Taylor, 5 Dana, 110.)

Of the original sum borrowed plaintiffs and James Greene each received five-seventeenths of the whole amount, and appellant received two-seventeenths. The loss to the solvent obligors on the note, by reason of the insolvency of James Greene, is, therefore, the amount for which he was liable, or five-seventeenths of the original sum borrowed, and which is to be made up and paid by those receiving the remaining twelve-seventeenths of the original loan, which amounts in figures to $6,000. Of this $6,000 appellees received $2,500 each, or $5,000, and the appellant $1,000, or one-sixth of the whole amount, and he should, therefore, be required to con-tribute only one-sixth of the loss sustained by reason of the insolvency above mentioned.

Appellees, recognizing this error, remitted $447.42, and they seek to enforce their judgment for only $1,521.32, which is exactly the amount of the $1,000 originally borrowed by appellant, with the accrued interest from the date of payment by appellee, and one-sixth of the amount for which James Greene was liable.

.We are of the opinion that no error was committed on the trial to appellant's prejudice except as indicated; and, as that has been corrected by the remission of so much of the judgment as was erroneous, the judgment is affirmed. .

Judge Hazelrigg not sitting.