## MARESH v. JENNINGS et al.
### No. 7573.

Court of Civil Appeals of Texas. Austin.
April 8, 1931.

Rehearing Denied May 13, 1931.

J. B. Daniel, of Temple, and A. L. Curtis, of Belton, for appellant.

Sam D. Snodgrass and Walker Saulsbury, both of Temple, for appellees.

BAUGH, J.

W. W. Jennings, W. F. Blum, Jr., and A. J. Jarrell sued Wm. Maresh, E. W. Moore, C. C. Carson, and H. F. Blum for contribution for moneys paid by plaintiffs on three promissory notes, signed by all of said parties. One note was for $15,000, payable to F. N. Miller; one for $2,500, payable to D. Neal; and one for $5,000, payable to P. Hammersmith. The defendant H. F. Blum signed only the Hammersmith note, but all other parties plaintiff and defendant signed all of said notes. The defendant E. W. Moore died pending trial. The jury found that his estate and the defendant C. C. Carson were both insolvent. No liability was established against H. F. Blum. Judgment was rendered upon special issues found by the jury, in favor of the several plaintiffs against Maresh alone for the respective amounts pleaded, from which he alone has appealed. He asserts no error as to the discharge of his co-defendants.

The facts pertinent to the issues raised on this appeal are substantially as follows: On December 17, 1927, the First State Bank of Temple became insolvent, was liquidated by the state banking commissioner, and a 100 per cent. assessment levied against its stock-

holders. First State Bank of Temple was immediately organized as a new corporation with a capital stock of $50,000, to which new corporation were transferred all of the assets of the old bank, including the charged off notes and accounts and the assessments levied against its stockholders. The capital stock of the new corporation was owned by the parties to this suit in the following amounts:

| Name | Share | Amount |
|------|-------|--------|
| E. W. Moore | 150 | $15,000 |
| Wm. Maresh | 150 | 15,000 |
| A. J. Jarrell | 50 | 5,000 |
| W. F. Blum, Jr. | 50 | 5,000 |
| C. C. Carson | 25 | 2,500 |
| W. W. Jennings | 25 | 2,500 |
| H. F. Blum | 25 | 2,500 |
| | 475 | $47,500 |

█ The notes in question were given for money borrowed by the makers to pay for capital stock in the new bank, and the various parties received benefits therefrom in proportion to the stock so held by them. While all of said parties executed said notes as joint and several principals, as between themselves their liability was in proportion to the benefits received; that is, in the ratio that the amount each party's stock bore to the total amount of the stock owned by all those who signed the respective notes involved. And in case one maker were compelled to pay more than his proportionate share of said indebtedness, he would be entitled to contribution from his co-obligors who had paid less than their proportionate share on such pro rata basis. As stated by Judge Fly, in Graves v. Smith, 4 Tex. Civ. App. 537, 23 S. W. 603, in discussing a similar question, "If the note was signed by the three men as principals, upon a settlement among themselves of the indebtedness each one would be liable to the one paying the whole indebtedness in proportion to what each obtained out of the consideration of the note." See also Merchants' Nat. Bank v. McAnulty, 89 Tex. 129, 33 S. W. 963; 10 Tex. Jur. 540; 13 C. J. 825; 6 R. C. L. 1037, 1046. Contribution as between the makers of said notes prorated according to the benefits received seems well established by these authorities. Those who signed the Miller and Neal notes owned $45,000 of the stock in said newly organized bank, of which appellant owned $15,000, and would, therefore, owe one-third of the amount of said two notes. Those who signed the Hammersmith note, which included H. F. Blum, owned $47,500 of said stock, and appellant's portion of that note would be $6/19$ of the amount thereof. Had all of the makers remained solvent, the distribution of the amount due by each would be a simple matter; and the adjustment of the amounts with which each was chargeable purely a matter of mathematical calculation.

However, the makers E. W. Moore and C. C. Carson paid nothing, and were insolvent. H. F. Blum was discharged from any liability to the plaintiffs on the ground that he had paid all that he was due on the notes, leaving only the appellant and the three appellees, plaintiffs below, to adjust the remaining burden as between them. The further question is therefore presented: What is the proper measure of contribution between the solvent makers of said notes with reference to the sums due on said notes by the makers who became insolvent, and which their comakers had to pay for them? Of the total of the Miller and Neal notes, the insolvent makers were due to pay $7/18$ and of the Hammersmith note $7/19$.

█ The general rule of contribution is that the burden is to be borne ratably by the solvent obligors, leaving out of account the insolvent ones. In the instant case, only four solvent makers remaining, after the discharge of H. F. Blum which is not complained of, each would ordinarily be liable for $1/4$ of the amount paid. And appellant earnestly insists that such is the rate and extent of the liability of each of said four, including appellant, for the additional sums they were compelled to pay because of the insolvency of Moore and Carson. We do not, however, sustain this contention. We have found no Texas case in point on this particular question. Greene v. Anderson, 102 Ky. 216, 43 S. W. 195, is a case directly in point. In that case the Kentucky Court of Appeals held that where co-obligors shared unequally in the proceeds of a note, and one of them subsequently became insolvent, the remaining solvent obligors must bear the entire burden in proportion to the benefits received, and not equally as to the portion due from the insolvent maker. This case was approved by the Ohio Court of Appeals in Reel v. Combes, 25 Ohio App. 476, 159 N. E. 133. The rule stated in 6 R. C. L. 1038 is: "So where three persons borrow money jointly, but appropriate individually unequal sums, the benefit to each is according to the amount appropriated by each; and if one becomes insolvent, the other two should bear the loss in proportion to the sum employed by each for his own use."

██ We consider this rule sound in principle. Contribution as between co-obligors is entirely an equitable right. We can see no good reason for prorating the liability, as between themselves, of all makers of the note in paying it to the creditor on the basis of benefits received; and then asserting a different measure of liability as between themselves where one or more of the joint makers becomes insolvent. While, in a sense, each co-obligor becomes a surety of the solvency

of all other co-obligors, that suretyship, if it may be so termed, is to the creditor, and not to each other. And equity demands, it seems to us, that he who received the greater benefit from the contract should bear the burden proportionate to his benefits whether the entire burden fell ultimately upon all of the comakers, or, whether because of insolvency of some it must rest finally upon only a part. The risk of such insolvency, like the primary obligation itself, should be commensurate with and in proportion to the benefits flowing to each of the joint makers.

Because of the varying amounts paid by the plaintiffs on the several notes and at different dates, the court's judgment including each of these adjustments is necessarily long and somewhat complex in details. We deem it unnecessary to set it out here. The amounts and dates of payments by the respective parties on each of the notes involved is not controverted. The trial court in his judgment fixed the plaintiffs' contribution against the defendant in accordance with the rules above discussed, which was the proper measure of recovery. No good purpose would be served in setting out here the various detailed items thereof.

Nor did the court err in overruling appellant's plea in abatement filed in the trial court. This plea alleged, in substance, that all of the charged off notes and accounts of the old bank, together with the assessment made by the banking commissioner against its stockholders, were transferred to the newly organized bank; and that an agreement was then made between all the parties to this suit to the effect that all dividends derived from the collection by the newly organized bank of all said charged off notes and said assessments should be applied to the payment of the notes involved herein; and that the effect of such agreement "was to create a trust estate of said charged off items and the assessments against the stockholders of the old bank, and to use the proceeds for no other purpose than to pay off and discharge the notes which had been executed to provide the capital of said bank."

He also alleged that there still remained sufficient assets in said trust estate to pay the amount of the notes involved; that the estate of E. W. Moore had a vested interest therein; and that this suit ought to abate until his estate could be administered and until said trust estate could be wound up and the proceeds thereof properly distributed.

While there was conflict in the testimony as to such purported agreement, we think that is immaterial. The plea alleged and the proof shows that all of said charged off notes, assessments, etc., were transferred to the newly organized bank. They thereupon became its property to be handled as would

any of its other notes or assets under the banking laws of the state. There is no allegation that the bank agreed to or did set aside said portion of its assets as a trust fund. Nor would such an agreement, if attempted, have been valid. The notes here involved were the personal obligations of the makers. The bank was in no sense liable for any part of them. Obviously it would have had no authority to set aside any of its property, or to designate any of its revenue, to pay the individual debts of its stockholders. Nor could the parties hereto, in their individual capacity, in which only they were alleged to have acted, make any valid agreement in any manner disposing of, or making a trust estate of, property which belonged to the bank, and the bank is not alleged to have made such an agreement. That set up in said plea in abatement was one which, if made, was wholly invalid, and the trial court properly overruled such plea.

While we have not undertaken seriatim nor consecutively to dispose of all of appellant's contentions, what we have said disposes of the issues raised. Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.