ROBERT C. AMOS *vs.* EDWIN H. BENNETT & another.

Suffolk.   March 8. — July 29, 1878.   COLT & SOULE, JJ., absent.

In an action on a bond given by one partner to another, on the dissolution of the firm, and conditioned that the obligor should pay the debts of the firm and hold the obligee harmless thereon, it appeared that the obligee assigned the bond to the creditors, and, partly before and partly after the assignment, paid certain of the creditors the amount of their debts, some by a check which he borrowed and gave his note for, and some by notes, and that the creditors receipted their bills. *Held*, on the defendant's exceptions, that the notes were to be presumed to be negotiable notes; that, this being so, there was *primâ facie* evidence of payment of the debts; and that the facts that the payments were voluntary and that the bond had been assigned were immaterial.

CONTRACT, against Edwin H. Bennett and Charles Haynes, upon a bond dated December 15, 1874, naming the plaintiff as obligee, in the sum of $3000, signed by the first named defendant as principal, and the other as surety, and containing the following condition :

" The condition of the obligation is such that whereas the said Amos & Bennett, doing business under the firm name of Amos & Bennett, and proprietors of the Avon Club House, 30 Avon Street, Boston, have contracted certain debts in fitting up and furnishing said house, and for supplies thereof; said parties have this day dissolved said partnership; said Amos has conveyed to said Bennett all his interest in said house, and in and to said furniture, fixtures, goods, effects and credits of said firm, and retires from said partnership; and the said Bennett continuing said business, in consideration of the conveyance aforesaid, and of said Amos retiring from said house, hereby agrees to assume

and pay all the rent, carpenters', painters' and plumbers' bills, for supplies, and all other bills and debts contracted for and on account of said firm business. Now if said Bennett shall pay the same and hold said Amos harmless on account, then this obligation shall be void; otherwise, it shall be and remain in full force and virtue. Nothing herein shall be construed to prevent said Bennett from contesting claims which he may deem improper." Bennett was defaulted; and Haynes alone defended.

At the trial in the Superior Court, before *Wilkinson,* J., it appeared that the plaintiff and Bennett, as copartners, established an eating-house; that, in fitting it up and carrying it on, Bennett contributed about $600, and the plaintiff contributed nothing, and they contracted debts to the amount of $2700 or more; that they carried on this eating-house about two months, still owing these debts, when they dissolved the partnership, and the bond in suit was then given; and that the plaintiff, having no attachable property, on January 12, 1875, executed an assignment of the bond to his creditors, "as security for my indebtedness to said parties;" and delivered the bond and assignment to the attorney of the creditors, who had since retained them.

The plaintiff testified that he borrowed a check for the amount of the debt to certain of his creditors, giving his note for the same, for the purpose of paying the debt, and passed the check to them in payment of the debt, but whether this was before or after he made the assignment of the bond he did not remember; and that, after he made the assignment, he gave his promissory notes, payable on demand, to other creditors, one to each for the amount of his debt. He also produced the bill of one of them, which bore the word "settled" written over the signature of an attorney, as the receipt he took on giving his note for that debt, and testified that he believed he got the same kind of receipts from the rest of the creditors, on giving them notes as above stated; and those creditors testified at the trial that they approved the settlements by notes.

The plaintiff further testified that payment had not been demanded or made on either of the above mentioned notes, and that he and Bennett examined all these bills and found them correct. Haynes testified that he had paid the bills of several other creditors of Amos & Bennett.

The plaintiff contended that there had been a breach of the bond; and the judge, by request of the plaintiff, directed the jury to assess the sum due if they found a breach.

The defendant Haynes asked the judge to rule that, it appearing that the plaintiff had parted with all interest in the bond, and there being no evidence that the plaintiff ever paid any of the debts before he assigned the bond, there had been no breach; that the bond could not be prosecuted in the plaintiff's name for the benefit of creditors of Amos & Bennett; and that damages could not be assessed for the payments made by notes of Amos to creditors.

The judge refused so to rule, and instructed the jury that the mere fact that the bond was assigned would not prevent the action being maintained either for the benefit of the plaintiff or for the benefit of the creditors whose claims had been settled by the plaintiff; and that if payment had been made by note and check, such payment by note, where satisfaction was acknowledged, would be sufficient and equivalent to cash.

The jury returned a verdict for the plaintiff in the sum of $1001.36, being the amount of the money paid and notes given, and interest; and the defendant Haynes alleged exceptions.

*T. L. Livermore*, for the surety. 1. The money actually paid is the measure of damages, even if judgment is suffered for the balance. *Valentine* v. *Wheeler*, 122 Mass. 566. The only exception to this is where negotiable notes are given. There was no evidence in this case that the notes given by the plaintiff were negotiable. Giving a bond for the debt of another, even where it is accepted as payment, will not warrant a verdict in an action against that person for money paid to his use, or for contribution. *Taylor* v. *Higgins*, 3 East, 169. *Maxwell* v. *Jameson*, 2 B. & Ald. 51. *Cumming* v. *Hackley*, 8 Johns. 202.

2. It was error to rule that a recovery could be had for the benefit of the creditors. *Wallis* v. *Carpenter*, 110 Mass. 347. *Valentine* v. *Wheeler, ubi supra*. The bond was assigned to the creditors as security for the original debts. Those debts were paid by the plaintiff's notes after the assignment. No contract in evidence put the bond in the creditor's hands as security for these notes, and therefore the creditors had no interest in the bond, or right of recovery thereon.

3. No recovery could be had for the plaintiff's benefit, because he paid without demand on him, and without receiving an assign· ment of his bond, to which he was entitled. The payment was then a voluntary one, on account of which he was not entitled to indemnity. *Skillin* v. *Merrill*, 16 Mass. 40. *Munroe* v. *Easton*, 2 Johns. Cas. 75. Furthermore, the last clause of the bond, to wit, " Nothing herein shall be construed to prevent said Bennett from contesting claims which he may deem improper," controlled every other provision which would otherwise have permitted the plaintiff to pay without demand on the defendant Bennett. No such demand was made on Bennett, either by the plaintiff or his creditors. This clause was as much for the protection of the surety as of Bennett, and ought to be given every possible effect for the benefit of the surety.

*C. H. Chellis*, for the plaintiff.

LORD, J. There seems to be no valid objection to the several rulings in this case. The case finds that Amos paid several debts, against the payment of which the bond in suit was given to him as an indemnity. In one case he borrowed the money, or a check upon which he was to receive the money, and paid the debt with the proceeds of the loan. In other cases he gave his notes, which were accepted as payment. In this Commonwealth, a negotiable promissory note given for a debt is, in the absence of all proof, payment. A non-negotiable note is not payment. The defendant objects that it does not appear that the notes were negotiable. It is the duty of the excepting party to make it appear that the exception is well taken. If a bill of exceptions is capable of two constructions, equally consistent with the other facts stated in the bill, the construction which sustains the ruling is to be deemed the true one. It is enough to say that it is, at least, as probable that the notes given were negotiable, as that they were non-negotiable. No question upon this point appears to have been made before the presiding jus· tice at the trial ; and it is not to be presumed that a rule of law so familiar was overlooked by the court and by the parties ; but rather that the point is now first raised here, upon the discovery that the bill of exceptions is susceptible of two constructions.

Nor can the objection, that the payment by Amos was a vol· untary payment, prevail. The case from our own reports, *Skil·*

*lin* v. *Merrill*, 16 Mass. 40, cited by the defendant in support of the objection, is decisive against it. In that case, payment was made by the surety before the liability was fixed, and the co-surety had made arrangements for the surrender of the principal, by which he would be relieved from all liability. In deciding it, Chief Justice Parker says: " In the case of a voluntary payment of money actually due, to avoid a suit, there is no doubt that he who pays the money may compel his co-surety to contribute." In the case at bar, it is found that the several amounts paid were absolutely due. The fact that the bond was assigned is an immaterial fact. Suit must be brought in the name of the assignor, and all defences are open to the defendant. There is no claim made that the bond had been released, discharged or satisfied. The only claim made is that the legal effect of the bond may be different from what the defendant expected when he entered into the obligation. Of course, this objection cannot prevail. When a party affixes his name to an obligation, he is bound by the legal construction of such obligation, not by any other construction which he attaches to it. If Amos had borrowed of a third party money for the special purpose of paying the debts of the partnership of Amos & Bennett, upon which he was liable, and with such money had paid the debts, there is no rule of law which would prevent the assignment of the bond to the lender as collateral to the loan. Between such a transaction and the facts in this case there is no difference in principle.

*Exceptions overruled.*