# National Bank of Kennett Square *v.* Shaw, Appellant.

*Promissory notes—Evidence—Parol agreement—Written contemporary agreement.*

Where at the time a promissory note was given to a bank, a contemporary oral agreement subsequently put in writing was entered into between the bank and the maker of the note, by which the latter was in express terms relieved from all individual liability on the note, and the agreement provided the sole source from which payment was to be made, and it also appears that the giving of the note was a mere device to avoid trouble with the bank examiner, and the comptroller of the treasury, the maker cannot be held liable for the payment of the note.

*Contract—Written agreement—Parol agreement—Evidence.*

Where the officials of a bank prepare a written agreement which is submitted to the directors and approved by them without any question being raised as to omissions in the writing, and the contract is then submitted to and executed by the other party, the evidence of the directors taken in litigation several years after to the effect that there were material omissions in the writing, which evidence is contradicted by the other party, is not such clear, precise and indubitable proof as will justify a reformation of the instrument, and it is error to submit it to a jury.

Argued Feb. 11, 1907. Appeal, No. 203, Jan. T., 1906, by defendant from judgment of C. P. Chester Co., Aug. T., 1904, No. 28, on verdict for plaintiff in case of National Bank of Kennett Square v. P. B. Shaw. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Assumpsit on a promissory note. Before HEMPHILL, P. J.

At the trial it appeared that on April 4, 1899, the defendant gave his promissory note to the plaintiff for $5,000, payable in four months. At the time the note was given the following agreement was entered into between the bank and defendant.

"It is hereby understood and agreed that P. B. Shaw shall not be held responsible for the payment of his note of five thousand dollars ($5,000) payable to the order of himself and dated 4th day of Feb., A. D. 1899, at four months and discounted

by said bank, and the proceeds whereof was for the benefit of
the Pennsylvania Marble and Granite Co., a corporation in-
corporated under the laws of the state of New Jersey ; the said
amount of Five Thousand Dollars to be repaid to said Bank
out of the first earnings or profits of the business of the above
named company to the extent of one-third of said earnings,
or profits arising from monthly sales of marble, granite or
other stone from the quarries of said company, and said bank
shall participate in said profits until said note shall be paid in
full with discounts on same. In the event of said company
failing to earn sufficient profits to pay said note and discounts,
the said bank will not hold said Shaw personally liable for the
repayment of said note or any unpaid portion thereof. This
action being taken on an agreement of the members or stock-
holders of said Pennsylvania Marble and Granite Co., upon its
reorganization to repay said bank out of the earnings or from
sale of stock of said company, or in lieu of same (if not paid in
cash) issue and deliver to said bank such an amount of stock
as will in the aggregate amount to the entire balance unpaid
of the indebtedness of the Acme Lime Co., Avondale Marble
Co., indorsed notes of Hunt, Hepburn and Volmer, also busi-
ness paper of Gimm Deitrich, or any other like obligations on
which the former operations or companies have received the
money on, by being discounted at and by said bank, and said
obligations still remaining unpaid, or any portion thereof, after
all collateral held by said bank (that can legally be disposed
of) have been sold, and the proceeds thereof applied to the pay-
ment and discharge of said indebtedness of said several com-
panies or operations above mentioned, dated at Kennett Square,
Pa., April 4, 1899."

Verdict and judgment for plaintiff for $7,012.50. Defend-
ant appealed.

*Errors assigned* were (1–10) above instructions quoting them.

*John G. Johnson* and *Alfred P. Reid,* for appellant.—The
proof was not sufficient to justify the alteration of the written
contract: Ogden v. Traction Co., 202 Pa. 480; Rowand v.
Finney, 96 Pa. 192 ; Streator v. Paxton, 201 Pa. 135 ; Union
Storage Co. v. Speck, 194 Pa. 126.

*A. M. Holding,* with him *M. Hampton Todd,* and *C. J. Hepburn,* for appellee.—Evidence to show the terms of the oral agreement, or conditional release, made contemporaneously with the giving of appellant's note, was properly admitted—notwithstanding the paper writing of April 14, 1899 : Gower v. Sterner, 2 Wharton, 75 ; Huss v. Morris, 63 Pa. 367 ; Gump's App., 65 Pa. 476 ; Chew v. Gillespie, 56 Pa. 308 ; Hyndman v. Hogsett, 111 Pa. 643 ; Jenkins v. Davis, 141 Pa. 266 ; Middleton v. Thompson, 163 Pa. 112; Lee v. Taylor, 154 Pa. 95 ; Schotte v. Meredith, 192 Pa. 159 ; Knight's Estate, 20 Pa. Superior Ct. 413 ; McCormick Harvesting Machine Co. v. Nicholson, 17 Pa. Superior Ct. 188 ; American Harrow Co. v. Swoope, 16 Pa. Superior Ct. 451 ; Wheatley v. Neidich, 24 Pa. Superior Ct. 198 ; Schweitzer v. Stoeckel, 4 Phila. 281.

Even if the paper writing of April 14, 1899, were held to be the contract, as counsel for appellant now contends, no sufficient defense was made to the appellee's claim upon its note.

That Mr. Shaw was to be held upon his note, unless there were carried out by some one the stipulations in the paper writing of April 14, 1899, there can be no doubt, and that it was necessary upon the part of the defendant to show a performance of the undertakings in that paper, before he could interpose as a defense to a suit upon this note that paper writing, is abundantly shown by the authorities : Schilling v. Durst, 42 Pa. 126 ; Weichardt v. Hook, 83 Pa. 434 ; McCrelish v. Churchman, 4 Rawle, 26 ; Levering v. Phillips, 7 Pa. 387 ; Dunham v. Pettee, 8 N. Y. 508 ; Anspach v. Bast, 52 Pa. 356.

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 25, 1907 :

This is not the ordinary case of the obligor in an instrument for the payment of money seeking to escape the obligation through parol testimony. On the contrary, the case starts with a clear agreement of the parties in writing that notwithstanding the face of the note, the maker was not to be liable. It is admitted that when the original note (of which the one in suit was a renewal) was executed, an oral agreement was made by the parties with regard to its payment and the liability of the maker. This agreement was put into writing nearly two months later by the plaintiff bank itself and is the substantial basis for the determination of the case. It provides in explicit

terms, first, "that P. B. Shaw shall not be held responsible for the payment" of the note; secondly, that the proceeds of the discount of the note by the bank are for the benefit of the Pennsylvania Marble and Granite Company, thirdly, "the said amount of five thousand dollars to be repaid to said bank out of the first earnings or profits of the business of the above named company to the extent of one-third of said earnings, or profits arising from monthly sales of marble, granite or other stone from the quarries of said company." Having thus agreed that the maker of the note shall not be primarily liable, and provided affirmatively how payment shall be made, the agreement then guards against any inference of a secondary liability of the maker by the specific agreement that "in the event of said company failing to earn sufficient profits to pay said note and discounts, the said bank will not hold said Shaw personally liable for the repayment of said note or any unpaid portion thereof. This action being taken on an agreement of the members or stockholders of said Pennsylvania Marble and Granite Company, upon its reorganization to repay said bank out of the earnings or from sale of stock of said company, or in lieu of same (if not paid in cash) issue and deliver to said bank such an amount of stock as will in the aggregate amount to the entire balance unpaid of the indebtedness of the Acme Lime Company, Avondale Marble Company, indorsed notes of Hunt, Hepburn and Vollmer, also business paper of Gimm Deitrich, or any other like obligations on which the former operations or companies have received the money on, by being discounted at and by said bank, and said obligations still remaining unpaid, or any portion thereof, after all collateral held by said bank (that can legally be disposed of) have been sold, and the proceeds thereof applied to the payment and discharge of said indebtedness of said several companies or operations above mentioned." This as already said was put into writing by the bank itself as expressing the oral agreement made at the time of the execution of the note, and it must therefore be accepted and treated as cotemporary with it.

The underlying motive and real intent of this arrangement as testified to by the defendant were that the bank was the holder of obligations of the Acme Lime Company, Avondale Marble Company and other predecessors and constituents of the

reorganized Pennsylvania Marble and Granite Company, and was willing to put money into the new enterprise to save its investments already involved in the old ones. And the note of defendant was given for appearances, as a nominal equivalent for the money so advanced, in order to avoid question with the bank examiner and the controller of the treasury.

Against this ample and complete explanation the plaintiff set up that the writing did not contain the whole agreement, two matters being overlooked or accidentally omitted as stated in the charge; first, that Shaw " was to furnish monthly statements of the profit or loss at which this business was being conducted, because under the agreement they were to receive one-third of the profits if there were any ; and the second was that he was to see to the furnishing of the stock or cash which was to satisfy them or to secure them in their unsecured notes which they held against Vollmer, Grimm, The Acme Lime Company and some others. "

Of these matters it is to be said in the first place that it does not appear that the omissions were at all material. It is not shown that the plaintiff lost any profits that were made to which it was entitled, or that it ever demanded and was refused the stock which the written agreement called for as collateral for the indebtedness of the Acme Lime Company and the other parties named.

The defendant denied positively that there were any such omissions in the writing as were alleged. Some discrepancies in his testimony are shown, but they are on minor and immaterial points and perhaps not to be wondered at considering the lapse of six or seven years between the transaction and the trials. On the main point of his exemption from liability his testimony is clear and positive and in accordance with the writing. The case does not really need his testimony at all, but could stand firmly on the writing alone.

For the plaintiff on the other hand the bank directors, five in number, testified, as summed up in the charge, that " these two omissions were made and that even when the paper was read over to them and they approved it and ordered their officers to execute it and forward a copy to Mr. Shaw, that it was an oversight on their part, that they mistook or did not recall it at that time, and it seems did not recall it until a far later

period, and not until there was some litigation entered into or about to be commenced in connection with this note itself. . . . But this is their recollection after some years as against a written instrument executed only two months or a little more after the time that the oral agreement was made, when they attempted to put it in writing." The learned judge, in submitting it to the jury, gave them the correct rule in these words, " in a case of this character the testimony should be clear, precise and indubitable. When they attempt after several years to say that an instrument in writing made by themselves, fathered by themselves and presented to the defendant here is their understanding of the agreement, I say that the testimony, to satisfy you that it was not the agreement made on February 3, should be testimony that would convince you of that fact beyond question, or in other words, that the testimony should be full, precise and indubitable. " He nevertheless submitted it to the jury and in this there was error. It was not up to the standard required and the jury should have been directed to say so.

Judgment reversed and judgment directed to be entered for the defendant non obstante veredicto.