**BARTON v. FARMERS' STATE BANK et al.**
**(No. 695–4251.)**

(Commission of Appeals of Texas, Section A.
Oct. 14, 1925.)

**1. Appeal and error ⬅917(1)—Truth of plaintiff in error's allegations assumed, where case was determined on exceptions.**

Where case was determined on exceptions, Commission of Appeals must assume truth of plaintiff in error's allegations.

**2. Pleading ⬅352—Motion to strike all of supplemental petition, including general demurrer, properly overruled.**

Motion to strike all of supplemental petition, which included general demurrer, was properly overruled.

**3. Parties ⬅96(4)—Pleading ⬅406(8)—Misjoinder of causes of action and parties held waived by failure to press objection.**

Plaintiff and impleaded cross-defendant, not pressing objection to misjoinder of causes or parties on appearance day, but consenting to continuance to subsequent term, *held* to have waived misjoinder.

**4. Parties ⬅92(1)—Pleading ⬅406(8)—Objection to misjoinder of parties or causes waived, where not pleaded in limine or at first reasonable opportunity.**

Rule forbidding misjoinder of causes or parties, being one of convenience, which should not be permitted to defeat general policy of avoiding multiplicity of suits, should be pleaded in limine or at first reasonable opportunity, and, if not seasonably made, is waived.

**5. Parties ⬅92(1)—Impleaded defendant, seeking to implead other merely proper parties, and not excepting to misjoinder until succeeding term, could not object to misjoinder because of delay in trial.**

Impleaded defendant, appearing and answering cross-action on appearance day of first term at which case was triable, filing impleader of other merely proper parties before continuance, and not interposing special exceptions to misjoinder of parties and actions until succeeding term, could not object to such misjoinder because of resulting delay in trial.

**6. Parties ⬅92(1)—Sustaining demurrers by plaintiff and impleaded defendant to answer and cross-action for misjoinder of parties and actions held not justified by supposed prejudice to plaintiff.**

Sustaining demurrers by plaintiff bank and impleaded officer thereof to answer and cross-action against latter for misjoinder of parties and actions in bank's suit on note *held* not justified by supposed prejudice to bank by delay incident to impleaders, where it did not press objection to misjoinder during term at which case made by its pleadings was first triable, and knew long before suit that note was signed by defendant for restricted purpose, and grew out of debt, for which cross-defendant and another of its officers, who was insolvent, were jointly liable with defendant, as alleged in answer and cross-action.

**7. Action ⬅48(3)—Dissimilarity of suits, as distinguished from subject-matter, not test of multifariousness.**

Dissimilarity of suit on note against maker and suit against maker and nonsigners on collateral agreement is not test of multifariousness, as subject-matter of both suits may relate to or be different parts of same transaction, or subject-matter of one may include entire subject-matter of other.

**8. Action ⬅48(3)—Action on note and defendant's cross-action for judgment over against joint debtor held parts of same transaction.**

Bank's suit on note for loan to two of its officers and defendant, who alone signed it, and defendant's cross-action against one of such officers for judgment over, *held* properly joined as directly relating to, forming parts of, and together constituting, same transaction; note being so much an inferior part of transaction as to render it extremely doubtful whether it ever took effect as enforceable obligation in præsenti, in view of Negotiable Instruments Act, § 16 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001–16).

**9. Action ⬅50(1)—General policy to settle all controversies as to same subject-matter in one suit by means of cross-actions, etc., and vouching in of additional parties.**

It is general policy of law to settle all controversies relating to same subject-matter in one suit so far as possible without unduly prejudicing rights of interested parties, and, to avoid multiplicity of litigation, cross-actions, counterclaims, etc., and vouching in of additional parties are permitted under Supreme Court rule 7 (142 S. W. xvi), and Vernon's Sayles' Ann. Civ. St. 1914, art. 1848.

**10. Parties ⬅51(4)—Companies borrowing money from parties to whom loaned by bank held not necessary parties to cross-action by sole maker of note sued on by bank against codebtor.**

Oil companies, to which parties borrowing money from bank afterward loaned it, *held* not necessary parties to cross-action by sole maker of note given for original loan against codebtor impleaded as cross-defendant in bank's suit against maker; bank not being party to subsequent loan, so as to render such companies primarily liable, though cross-complainant's pleading alleged that money obtained on note was loaned for use of such companies.

**11. Parties ⬅51(4)—Admission of unnecessary parties held for trial court in its sound discretion, when question whether they are proper parties arises.**

When question arises as to whether companies to which money borrowed from bank was in turn loaned were proper parties to cross-action by sole maker of note to bank against codebtor in bank's action against such maker, trial court, in its sound discretion, may admit or refuse to admit them as then appears just, having in view probability, vel non, of prejudice to other parties already before court.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

276 S.W.—12

**12. Contribution ☞4, 6—Cause of action by maker sued on note against codebtor for judgment over held not purely for contribution; maker not required to show prior payment of joint debt.**

Cause of action by maker sued on note against codebtor for judgment over *held* not purely one for contribution, so as to require him to show prior payment of joint debt.

**13. Contribution ☞6—Indemnity ☞15(3)—Prior payment of common debt not condition precedent to action between active and passive joint tort-feasors whether in original suit or cross-action.**

Prior payment by co-obligor of more than his proportionate part of common debt is not condition precedent to action for contribution or indemnity between active and passive joint tort-feasors, whether relief is sought in original suits between them or by cross-actions in suits by injured parties.

**14. Contribution ☞6—Indemnity ☞15(3)—Prior payment of joint debt held not condition precedent to cross-action by sole maker sued on note against codebtors.**

Prior payment of common debt by debtor sued on note signed by him only *held* not condition precedent to cross-action by him against codebtors for contribution or indemnity, each debtor as between themselves being principal only to extent of his aliquot part of debt and surety for remainder, though jointly and severally bound to creditor.

**15. Contribution ☞6—Prior payment not essential, where there is undoubted equity in favor of defendant and whole matter can be litigated as between all parties without undue prejudice to any.**

Where there is undoubted equity in favor of defendant, and whole matter can be litigated as between all solvent parties without undue prejudice to any, prior payment is not essential to contribution from codebtor, especially where pleading avers element of bad faith or unfairness in original form of suit against such defendant only, and latter would have to make further payment before he could enforce collection of his judgment against codebtor.

**16. Contribution ☞6—Payment required as condition precedent to contribution need not be made with money.**

Payment, where required as condition precedent to contribution, need not be made with money; anything of detriment to one obligor, which has effect of discharging his coprincipal or cosurety from joint obligation, being sufficient.

**17. Contribution ☞6—Note taken with intent to extinguish debt, sufficient payment to support contribution.**

Note, taken with intent to extinguish prior debt, constitutes sufficient payment thereof to entitle maker to contribution from codebtors.

**18. Contribution ☞9(4, 5)—Pleadings in suit against sole maker of note held to show payment of debt by defendant or make payment issue for jury; codebtor was properly joined as defendant.**

Petition, answer, and cross-complaint by defendant against codebtor in creditors' suit against sole maker of note given for debt *held* to show either absolute payment of joint obligation by defendant or to make fact of payment an issue for jury, so that codebtor was properly joined as defendant.

**19. Appeal and error ☞882(3)—Bank recovering judgment on note as sole obligation of defendant cannot assert on appeal that prior joint debt was not discharged.**

Bank declaring, and recovering judgment, on note as sole obligation of defendant maker, though it could have sued and recovered on joint debt of maker and two others, cannot assert on appeal that prior debt was not discharged and that such codebtors are still liable, though it might subsequently replead and sue on joint debt.

**20. Pleading ☞381(1)—Proof that note was delivered for restricted purpose, and grew out of debt for which others than defendant were jointly liable held not cut off by ruling sustaining demurrers for misjoinder of parties and actions.**

Proof that note sued on was delivered for restricted purpose, and grew out of debt for which plaintiff bank's officers were jointly liable with defendant maker, *held* not cut off by ruling sustaining demurrers by plaintiff and codebtor, against whom defendant filed cross-action for judgment over for misjoinder of parties and action; fact issue as to unconditional delivery of note as extinguishment of debt being presented by answer and petition.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Farmers' State Bank against Lee R. Barton, who filed cross-action against and impleaded J. T. Hutto. Judgment against defendant Barton, affirmed by Court of Civil Appeals (263 S. W. 1093), and he brings error. Reversed and remanded.

White, Wilcox, Graves & Taylor, of Austin, for plaintiff in error.

Christian, Hammond & 'Christian, of Burnet, and W. H. Nunn, of Georgetown, for defendants in error.

NICKELS, J. The bank sued Barton, declaring upon a negotiable demand note of date November 29, 1921, for the principal sum of $5,000, interest, and attorneys' fees. The petition was filed September 6, 1922. Barton promptly answered, setting up a general demurrer, a general denial, and facts, which, if true, would show that the note in question was but manually delivered for a restricted purpose, and that whatever rights the bank had grew out of debt for which the bank's officers, J. T. Hutto and one McCann (with Barton), were jointly liable; it being shown that McCann was insolvent. Those facts were presented defensively, and, as the basis of a cross-action against Hutto, coupled with a prayer for the impleading of Hutto, etc., and for relief against him in the event the bank should have judgment against Barton. Hutto was duly cited, and appeared

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and answered the cross-action, etc., on appearance day of the January term, 1923. The opinion of the Court of Civil Appeals and subsequent portions of this opinion sufficiently disclose the nature of the pleadings.

At the next succeeding term of the court (and on May 29, 1923) the so-called special exceptions interposed by Hutto and by the bank (presenting alleged misjoinder of parties and actions) were sustained, and thereupon judgment was rendered against Barton alone for the full amount sued for; the court excluding all evidence offered by Barton to support his averments and denials. The action of the trial court was rightly presented by appropriate assignments of error in the Court of Civil Appeals, where the judgment was affirmed, and the same questions have been brought to the Supreme Court.

[1] Because the case was determined on exceptions, we assume (as we must) the truth of Barton's allegations.

[2] 1. Barton's motion to strike was properly overruled, because it was directed at the first supplemental petition as a whole, and that petition included a general demurrer. But for this, the motion should have been sustained for reasons disclosed in the next connection.

[3, 4] 2. No actual delay was encountered by reason of Barton's "cross-action" and the impleading of Hutto. The case made by the bank's pleading was first triable at the January term, 1923; and Hutto was vouched in prior to the beginning of that term; he answered on its appearance day, and thereafter remained a party defendant. Both Hutto and the bank had ample opportunity, on January 2d, and throughout the January term, to press any objection of misjoinder of causes or parties. Hutto did not insist upon disposition of the questions at that term, and the bank did not even suggest them, but, on the contrary, they consented (on the third day of the term) to a continuance of the case to the May term, 1923. Prior to the continuance, Hutto had filed his contemplated impleader of the oil companies; and to this pleading and prayer the bank did not, at the January term or subsequently, respond or object in any way, although it had the chance as early as January 2d. If Hutto had diligently embraced the opportunity to have the court determine whether the oil companies were necessary parties, and it had been found they were such, they would have been duly cited and served and compelled to answer to the May term, presumably ready for trial. Like means of preventing delay were open to, but ignored by, the bank. In view of the fact that the rule sometimes forbidding misjoinder of causes or parties is one of convenience, which ought not to be permitted to defeat the general policy of avoiding multiplicity of suits (Great Southern Life Ins. Co. v. Dolan [Tex. Civ. App.] 239 S. W. 242; Lawrence v. Cooper Co. [Tex. Civ. App.] 237 S. W. 961), the objection should be pleaded in limine (Kemendo v. Fruit Dispatch Co., 61 Tex. Civ. App. 631, 131 S. W. 73, 76), or at the first reasonable opportunity in any event. If the objection be not seasonably made, the right to make it is waived; and we believe it was waived here (Adams v. First National Bank [Tex. Civ. App.] 178 S. W. 993), and, therefore, the court erred in sustaining the demurrers. It is proper, here, to correct the statement of the Court of Civil Appeals to the effect that Hutto was dismissed from the case January 3d, and the bank, therefore, had nothing to which objection could be made. Until May 29th Hutto remained a party, and the bank's opportunity and duty were that already shown.

[5] 3. A paradox would be committed if it were held that Hutto could object to the alleged misjoinder of parties on 'the score of delay in trial, even if he had not waived in the manner shown last above. He became a party as early as January 2d, and the proposal to bring in still others was his, not Barton's; and it was not pressed until May 29th. If he has a cause of action against the oil companies, or if 'he should have one as a result of present litigation between himself and Barton, he can declare upon it in another suit, if he objects to delayed trial in the present case. This is said upon the assumption that on the showing made the oil companies are not necessary parties to Barton's cross-action, and the reasons for this assumption will appear in paragraph 6 below.' If the companies are merely proper parties, Hutto can easily preclude delay, and yet have means of protection, by waiving his request for their bringing in; and, if he does not care to waive, the trial court can properly exert discretion to keep them out.

[6] 4. One basis of the demurrer, and one reason which moved the trial court and the Court of Civil Appeals to sustain it, is that delay will result to the prejudice, and without the fault of the bank. Reasons why the bank is not "without fault" have been stated already in paragraph 2. But in another important sense, whatever delay, actual or potential, has or may be encountered is attributable to the bank and to its managing officer, Hutto. According to Barton's pleading (which must be taken as true) both the bank and Hutto had actual knowledge, from the beginning, of all the facts disclosed, and knew (long before the suit was filed) that the note was signed by Barton solely because of (and upon) the terms and conditions agreed to. which measurably restricted the purpose for which the paper was made. With this knowledge, they should have expected, and, if they were reasonably prudent men, they did expect, the exact form and nature of Barton's defense and effort at recoupment. With the agreements and condi-

tions averred by Barton in existence, both Hutto and the bank knew that the true situation was not disclosed in the bank's petition, and that by giving the petition its form they were breaching the contract with Barton, violating the conditions of the delivery of the note, and thereby practicing a species of bad faith toward Barton (Waukee Savings Bank v. Jones, 179 Iowa, 261, 159 N. W. 691) and the court. They must therefore be charged with anticipating that the facts would be disclosed by Barton, and that he would do what he has done for his own protection. Again, assuming Barton's allegations to be true, the bank was offered the opportunity at first to bring an effective suit against Hutto and Barton (and McCann if he was believed to be solvent) upon the joint obligation (Adams v. First National Bank, supra), and to hold them, and each of them, liable, merely by presenting the facts. Thus it could have foreclosed possibility of delay incident to impleaders; and, in doing so, it would have kept faith with Barton. But it chose to ignore the opportunity and to declare upon an incomplete and incorrect state of facts, and thereby to invite the exact condition to which it now objects. For present purposes, the naked legal right to give its suit the form selected may be conceded; but the existence of that right does not imply the further privilege of excluding the truth, even though development of the facts might require postponement of trial.

For these additional reasons we do not believe the trial court's action can have support in, or be justified by, the idea that the supposed prejudice to the bank is without its fault.

[7] 5. The only additional ground of the demurrers, and the only additional reason which impelled the trial court, and one of the reasons which moved the Court of Civil Appeals, is that there is no identity in, or connection between, the causes of action as between the bank and Barton on the one hand and as between Hutto and Barton on the other. In passing upon the question, the Court of Civil Appeals said:

"A suit on a note against the maker is not the same transaction as a suit against the maker of the note and others, not signers, upon a collateral agreement" etc.

[8] True enough, in a sense; but the suits themselves are not the "transactions" embraced in the test of multifariousness. The subject-matter of the suits may well relate to, or be different parts of, the same "transaction," or the subject-matter of one suit (e. g., Barton's "cross-action") may include, as a part of it, the whole of the subject-matter of the other. The note itself relates back to, and obviously is a product of, the course of dealing which began (as between Hutto, Mc-Cann, Barton, and the bank) in 1920. Its present nominal amount includes a portion of the original loan made to the three individuals in June, 1920, as, also, the unpaid portions of the additional loans made them, at various times, subsequent to June, 1920. Neither this note, nor any precedent one would ever have come into existence except for the making and partial performance of the agreement (of the bank, Hutto, McCann, and Barton) to the effect that the loans would be made as the obligations of Hutto, McCann, and Barton, but that the notes would be signed only by the latter because the others were managing officers of the bank, and their signatures upon the paper were "deemed inadvisable." So much is the note but an inferior part of the "transaction" which Barton avers, and a product of it, that it is extremely doubtful whether it ever took effect as an enforceable obligation in præsenti, because of the special and restricted purpose for which it was signed and manually delivered. Section 16, Uniform Negotiable Instruments Act, 1919 (article 6001—16, Vernon's Ann. Civ. St. Supp. 1922); Miller v. Murphy (Tex. Civ. App.) 206 S. W. 968; Storey v. Storey, 214 F. 973, 131 C. C. A. 269; Straus v. Citizens' State Bank, 164 Ill. App. 420; Paulson v. Boyd, 137 Wis. 241, 118 N. W. 841; Waukee Savings Bank v. Jones, 179 Iowa, 261, 159 N. W. 691; Norman v. McCarthy, 56 Colo. 290, 138 P. 28; Niblock v. Sprague, 200 N. Y. 390, 93 N. E. 1105; Smith v. Doetterweich, 200 N. Y. 299, 93 N. E. 985, 33 L. R. A. (N. S.) 892, 894. See, also, Schmidt & Story v. Bank of Commerce, 234 U. S. 64, 34 S. Ct. 730, 58 L. Ed. 1214; Martineau v. Hanson, 47 Utah, 549, 155 P. 432; National Bank v. Shaw, 218 Pa. 612, 67 A. 875; Laing v. Hudgens, 82 Misc. Rep. 388, 143 N. Y. S. 763; Rische v. Bank, 84 Tex. 418, 19 S. W. 610; Williams v. Wood Mowing Mach. Co. (Tex. Civ. App.) 154 S. W. 366; Gillean v. Bank (Tex. Civ. App.) 219 S. W. 896; Rahe v. Yett (Tex. Civ. App.) 164 S. W. 30, 34, and cases there cited; Waters v. Byers Bros. & Co. (Tex. Civ. App.) 233 S. W. 572, and the many authorities cited and discussed on pages 574–580; Bell v. Mulkey (Tex. Civ. App.) 248 S. W. 784; Meeks v. Holmes Commerce Co. (Tex. Civ. App.) 154 S. W. 365; Waters v. Byers Bros. & Co., supra; Rahe v. Yett, supra; Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; Ware v. Allen, 128 U. S. 590, 595, 9 S. Ct. 174, 32 L. Ed. 563. To us it is obvious that the two causes of action directly relate to, form parts of, and together constitute, one and the same transaction.

[9] It is the general policy of our law (administered in a blended legal and equitable jurisdiction) to have all controversies relating to the same subject-matter settled in one suit so far as that may be done without unduly prejudicing the rights of some of those interested; and, to effectuate the great purpose of avoiding multiplicity of litigation and sequent expense to parties and the pub-

lic, vexation and turmoil, our rules (vide, rule 7, 142 S. W. xvi), our statutes (article 1848), and our decisions have always permitted cross-actions, counterclaims, etc., and the vouching in of additional parties. It is believed that no case can be found where a defendant was not allowed to bring in additional parties and litigate with them, or with them and the plaintiff, when the substance of the cross-action and of the original action directly related to, arose out of, or constituted the same transaction between the parties. The liberality of practice is illustrated by the fact that even matters ex contractu and ex delicto can be so litigated, if they grow out of the same transaction, relate to the same subject-matter, and are dependent in their main aspects upon the same evidence. Bank v. Bank (Tex. Civ. App.) 77 S. W. 241; Kemendo v. Fruit Co., 61 Tex. Civ. App. 631, 131 S. W. 76; Adams v. First National Bank (Tex. Civ. App.) 178 S. W. 996; M., K. & T. Ry. Co. v. Maxwell (Tex. Civ. App.) 130 S. W. 722; Pullman Co. v. Hoyle, 52 Tex. Civ. App. 534, 115 S. W. 315; Ry. Co. v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341; Morris v. Davis (Tex. Civ. App.) 31 S. W. 850. The opinion in U. S. Fidelity Co. v. Fossati, 97 Tex. 504, 80 S. W. 74, on its own facts as well as in its discussion of other cases of wrongful misjoinder, etc., illustrates the bases of limitations so far imposed. In that case it was held that the Fidelity Company was not a proper party, and that there was misjoinder of actions, and the court pointed out the absence of certain elements as the basis of its decision. Each and every element whose absence was noticed in Fidelity Co. v. Fossati is present here. Those elements are: (a) Privity in transaction, or contract, as between the plaintiff and the defendants, the bank here being a party to all of the transactions and agreements set up by Barton, and the note itself being a part and creature of those dealings and contracts. (b) Existence of a cause of action in favor of the plaintiff and against all of the defendants—here the bank has such a cause and right on the agreement to which Hutto, Barton, and McCann were privies which it could have sued upon (Adams v. First National Bank, supra; Daniels on Negotiable Instruments, § 308a; Atwood v. Lewis, 6 Mo. 392; Brown v. Shelby, 4 Ind. App. 477, 31 N. E. 89; Mills v. Todd, 83 Ind. 25; Bridge v. Tierman, 36 Mo. 439; Durand v. Stevenson, 5 U. C. Q. B. 336). And (c) the fact that, on the main aspects, the proof necessary to a recovery by the plaintiff also substantially determines the basic issues as between the codefendants—here the evidence essential to the bank's recovery (if Barton's allegations are true, and we so take them) will, for reasons disclosed in paragraph 9 below, largely govern Barton's right to recover against Hutto. The court in that case does not hold that the absence of one or two of these three elements would have made it improper for the other defendants to bring in the Fidelity Company and litigate with it, but it does hold that the absence of all of them made it improper. Here none of the elements (there referred to) are missing.

We say, therefore, Barton had the right to plead his facts; and, because his facts are of the nature described, he had the right to implead Hutto and force him to bear his proper share of the burden; and in doing that there is no objectionable misjoinder of causes. His rights, in this respect, are considerably broader than those included in mere "contribution," and they rest upon the general policy and principle and privilege of avoiding multiplicity of suits.

[10] 6. But an application of the principles enforced in Fidelity Co. v. Fossati, supra, will eliminate the necessity of the oil companies as parties to Barton's cross-action. As between those companies and the bank there is no contractual relationship whatever. The bank in no way dealt with them. On the contrary, it dealt exclusively with Hutto, McCann, and Barton, and upon the basis only that it was making the loans to them, and that they should be liable on the obligation. Nor did Hutto, Barton, and McCann, or either of them, deal with the bank in the capacity of agents for the oil companies. At no stage of the dealings did the companies take any part in the transactions. There is no direct relationship whatever between the oil companies and the transactions themselves; the only indirect relationship, if it can be called that, lies in the mere fact that McCann, Barton, and Hutto may have loaned the money to the companies at some time after they borrowed it from the bank. If such subsequent loan was made, the bank had nothing to do with it; and, further, it does not appear that the money was not paid back to Hutto, McCann, or Barton, or some of them, if the loan was made. It is claimed that Barton's pleading alleges "the money obtained on the note in suit was loaned for the use" of the oil companies, and that those companies, therefore, are primarily liable. We do believe the pleading is rightly subject to that interpretation, but, if so, it remains clear that the bank did not so loan it—Barton specifically declares that the bank loaned it for the use of the three individuals, and upon their obligation alone, and, as remarked, the mere fact that those individuals may have intended to or may have reloaned it to the companies, is unimportant, in the absence of an effort by the bank to trace the funds, etc., and impress them with a trust character. An inspection of Hutto's averment shows that Hutto himself was mistaken as to what Barton had said, for Barton had not alleged that the note was made

for the use and benefit of the oil companies, in any such sense, at least, as would make them liable to the bank—the exact reverse of the proposition was declared by him. And, too, the truth of Barton's supposed averments is flatly denied in Hutto's allegation, and this amounts to affirmance of the truth of his real allegations. There is nothing in Barton's pleading, or even Hutto's to indicate any sort of privity of contract, or other relationship, as between the bank and the oil companies; hence on the question of whether those companies are either proper or necessary parties, one of the principal elements discussed in Fidelity Co. v. Fossati is lacking. There is no showing that the bank has any cause of action against the companies, or either of them; the opposite is shown, and it is obvious that the proof necessary to support a recovery by the bank as against Barton or Hutto or either of them (whether the suit be on the note or the joint obligation) would have no substantial bearing upon the main issues as between Hutto (or Hutto and Barton) on the one hand and the oil companies on the other. Because this is so, all other elements which were lacking in Fidelity Co. v. Fossati are likewise absent here.

The effect of the averments are that the bank contracted with McCann, Barton, and Hutto, and them alone; and it is upon the contract (to which the oil companies were in no sense parties) that Barton's claim for relief is founded. All issues there involved can rightly be determined in the absence of the oil companies; hence they are not necessary parties.

[11] Whether they are proper parties need not be determined, for that question has not yet arisen. And. when it does arise, if ever, the trial court may, or may not, in its sound discretion, admit them as to it then appears just, having in view the probability, vel non, of prejudice to other parties already before the court.

[12, 13] 7. The Court of Civil Appeals treated the cause of action attempted to be asserted by Mr. Barton as being one purely of contribution. And then, because it was thought he did not show prior payment of the joint indebtedness, it held his pleading insufficient to present an existing cause of action, that is to say, his suit is premature, and, per force, Hutto is not a proper party. But Barton's power to litigate is somewhat broader than his right as a mere contributee. See paragraph 5 above. Nor can we agree with that court on the proposition that he does not, as contributee, disclose a present right. It states that—

"It is well settled in this state that payment by one co-obligor of more than his proportionate part of a common debt must be made before a cause of action exists in favor of him against another co-obligor for contribution."

But this announcement of a general principle must be taken with recognition of the fact that there are many exceptions to its application and of the additional fact that the payment (when actually required) can be made in a number of ways.

Prior payment has never been exacted as a condition to the maintenance of actions for contribution or indemnity between active and passive joint tort-feasors, whether relief is sought in original suits between them or in cross-actions in suits brought by the injured parties. M., K. & T. Ry. Co. v. Maxwell (Tex. Civ. App.) 130 S. W. 722; Id., 104 Tex. 632, 143 S. W. 1148; Pullman Co. v. Hoyle, 52 Tex. Civ. App. 534, 115 S. W. 315; Kemendo v. Fruit Dispatch Co., 61 Tex. Civ. App. 631, 131 S. W. 76; Adams v. First National Bank (Civ. App.) 178 S. W. 996; City of San Antonio v. Smith, 94 Tex. 266, 59 S. W. 1109. Such actions have been maintained, even though, as regards the injured parties, the cause of action sounded in tort and as between the tort-feasors the liability was ex contractu. Pullman Co. v. Hoyle, Kemendo v. Fruit Dispatch Co., M., K. & T. Ry. Co. v. Maxwell, supra. Other exceptions to the rule of payment are illustrated by such cases as Adams v. First National Bank (Tex. Civ. App.) 178 S. W. 993; Bank v. Bank (Tex. Civ. App.) 77 S. W. 241; Skipwith v. Hurt, 94 Tex. 333, 60 S. W. 423; Haberzettle v. Dearing (Tex. Civ. App.) 80 S. W. 539; Pope v. Hays, 19 Tex. 378; Courchesne v. Fuel Co. (Tex. Civ. App.) 155 S. W. 684; Twichell v. Askew (Tex. Civ. App.) 141 S. W. 1072. See, also, Brandt on Suretyship & Guaranty (2d Ed.) §§ 285, 287; 7 Am. & Eng. Ency. of Law, p. 332, and note 4. The Court of Civil Appeals cited Twichell v. Askew, supra, to its proposition (quoted above). But that is a case where allowance of contribution as between original joint debtors before payment was approved. Twichell and eight others were signers and principal obligors of a note. Each of five of the signers had paid on the note a sum equal to one-ninth of its amount —Twichell paid nothing. The holder brought suit against the nine persons. The five (who had paid part) prayed for contribution from Twichell and the other three both as to the amount paid by them and as to the unpaid part, and this was allowed. The holder recovered, and the judgment (after reciting the five payments) decreed that execution first issue against Twichell (and the other three nonpayers), and that, if as a result the judgment was not satisfied, and the five (who had already paid parts) should have to satisfy the judgment, they also should have execution against Twichell et al. The result, of course, was that the five were allowed indemnity as to the whole of the unpaid portion of the obligation and contribution as to both the paid

and the unpaid portions. It appeared that three of the nonpayers were insolvent. This matter came before the Amarillo Court of Civil Appeals (in the case cited), and in respect to it that court said:

"The judgment nowhere entitles [Twichell] to contribution from his five co-obligors who were solvent in the event the sheriff collected the whole amount of said judgment, or more than his pro rata share thereof [i. e., one-sixth, since three were insolvent] from him. This would entitle him to a correction and a reformation of the judgment [i. e., so as to give him contribution]."

The court also approved—impliedly at least—the award of contribution (to the extent of one-sixth) to each of the five in respect to the amount of the note which had not been paid by them or by anybody else. The case, therefore, is not authority for the proposition enforced by the Court of Civil Appeals, but it does sustain Barton's right to relief, even if he has not "paid" the joint obligation.

[14] The basic idea upon which the joint tort-feasor cases and others permitting contribution or indemnity without prior payment rest is the thought that the burden should fall, as speedily as possible, upon the parties who are ultimately liable. The effort is to avoid circuity of action, and fix, or apportion, responsibility at once and where justice places it. And it must be conceded that wherever there is an element of primary and secondary liability as between the obligors, or actors, the courts properly recognize that prior payment need not be made. That element exists here in an important sense. For while, in respect to the bank, Barton, Hutto, and McCann are principal debtors, jointly and severally bound, yet, as between themselves, each is a principal only to the extent of his aliquot part of the debt and a surety for the remainder. Traders' National Bank v. Clare, 76 Tex. 47, 13 S. W. 183; Magill v. Brown, 20 Tex. Civ. App. 662, 50 S. W. 143, 642; Brownlee v. Young, 25 Mont. 38, 63 P. 798; Goodall v. Wentworth, 20 Me. 322; Hatch v. Norris, 36 Me. 419; 32 Cyc. p. 34; Owen v. McGehee, 61 Ala. 440, 444, and authorities there cited; Crafts v. Mott, 4 N. Y. 604; Brandt on Suretyship & Guaranty (2d Ed.) § 38; 27 Am. & Eng. Ency. of Law (2d Ed.) p. 433; Twichell v. Askew (Tex. Civ. App.) 141 S. W. 1072. As between Hutto and Barton (since McCann is insolvent), Barton is principal in respect to one-half of the debt and surety for Hutto as to the other one-half. We believe that the authorities do not require actual prior payment in a case of this sort, or that the strict technicality of the rule can justly be permitted to make noneffective the litigant's right to avoid a multiplicity of suits.

[15] In a case such as this, where there is an undoubted equity in favor of a defendant, plus a condition where the whole matter can be litigated as between all the solvent parties without undue prejudice to any of them, especially where the pleading avers an element of bad faith or unfairness in the original form of the suit, we believe that prior payment is not essential to contribution. Especially does this rule appear to be correct when it is considered that, if Barton should secure the judgment he asks for, necessarily he would have to make further payments on it before he could enforce collection against Hutto.

[16] 8. But within the true concept of the principle of contribution Barton's pleading, considered with the petition, shows either prior "payment" or such a condition as to make the fact, vel non, of "payment" an issue for the jury. Payment, where required, does not have to be made with money. This is recognized in every authority that we have seen. In the statement of the general rule made in 9 Cyc. 798, and 13 C. J. 823, it is said that the right of contribution is not "enforceable until there has been an actual payment * *. * of the common obligation or till something is done which is equivalent to a discharge thereof."

Mr. Brandt says that one cannot enforce contribution against another until he has "made a payment of the obligation, or assumed more than his share of the debt." Suretyship & Guaranty (2d. Ed.) § 254. See, also, Backus v. Coyne, 45 Mich. 584, 8 N. W. 699. It may properly be said, therefore, that anything of detriment to one obligor (whether principal or surety) which has the effect of discharging his coprincipal or cosurety from the joint obligation is a sufficient payment upon which to base contribution.

[17, 18] And amongst the familiar media of such payments are promissory notes, where the notes are taken with intent of extinguishing the prior debt. In several jurisdictions, if the note taken on a pre-existing debt is negotiable in form, its mere taking imports discharge of the debt, and is a payment adequate to support a suit for contribution. Robertson v. Maxcey, 6 Dana (36 Ky.) 101; Greene v. Anderson, 102 Ky. 216, 43 S. W. 195, 197, and cases there cited; Witherby v. Mann, 11 Johns. (N. Y.) 519; Pearson v. Parker, 3 N. H. 366; Cornwall v. Gould, 4 Pick. (Mass.) 444; Amos v. Bennett, 125 Mass. 120, 123; Gooding v. Morgan, 37 Me. 419. In those jurisdictions it is generally thought that, if the note, etc., be nonnegotiable in form, the question of extinguishment of the debt is one of fact about the intent of the parties. There appears to be no dissent anywhere to the proposition that, if the parties so intended, the note (regardless of its form) discharges the debt. Id.; Boulware v. Robinson, 8 Tex. 328, 58 Am. Dec. 117; Bell v.

Boyd, 76 Tex. 133, 13 S. W. 232; Swearingen v. Buckley, 1 Posey Unrep. Cas. 426; Ryan v. Kruser, 76 Mo. App. 500; Smith v. Mason, 44 Neb. 615, 63 N. W. 42; Stone v. Hammell, 83 Cal. 550, 23 P. 704, 8 L. R. A. 425, 17 Am. St. Rep. 274; Owen v. McGehee, 61 Ala. 440; Bone v. Torry, 16 Ark. 83; Mims v. McDowell, 4 Ga. 182; Sapp v. Aiken, 68 Iowa, 699, 28 N. W. 24; Rizer v. Callen, 27 Kan. 339; Larson v. Slette, 125 Minn. 267, 146 N. W. 1094, L. R. A. 1915A, 898; Fitch v. Fraser, 109 App. Div. 440, 96 N. Y. S. 85; Id., 188 N. Y. 605, 81 N. E. 1164; Keller v. Beatman, 49 Ind. 104; Chandler v. Brainard, 14 Pick. (Mass.) 285; Ralston v. Wood, 15 Ill. 159, 58 Am. Dec. 604; Peters v. Barnhill, 1 Hill (S. C.) 236; Brandt on Suretyship & Guaranty (2d Ed.) §§ 211 and 285; 7 Am. & Eng. Ency. of Law (2d Ed.) 338; and Id., vol. 27, p. 486. So that, if the petition and Barton's answer and cross-action here disclose a situation where either it must be assumed that the note was taken in extinguishment of the then existent joint obligation or there is an issue of fact joined on that point, Barton has either shown absolute "payment" of the joint obligation or he has made a jury question. In either event, Hutto is properly joined, and there is no objectionable multifariousness.

[19] The bank's petition declares upon the note as the sole obligation of Barton, and upon that position it recovered judgment against him. At the same time it could have sued and recovered upon the joint debt against Hutto, McCann, and Barton, if it had not taken the note as a discharge of the joint debt. This clearly imports a claim by the bank that the prior debt was discharged, and, having recovered solely because of that claim, it cannot, on this appeal, be heard to assert the contrary. It cannot both approbate and reprobate. Having asserted that Barton alone is liable to it, and having secured advantage on that score, it cannot now "mend its hold" (Ry. Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693), and, in order to retain the advantage, say that Hutto and McCann are still liable on the old obligation. It is estopped by conduct and the record. That it may be able in the future to commit this inconsistency by repleading and suing upon the joint debt is not important now, because we must judge the matter on the record as we find it. From the standpoint of the bank, therefore, there has been "prior payment" by Barton. And, if this is not conclusive upon the point, its inconclusiveness is due solely to the fact that Barton's averments (considered with those of the petition) raise an issue of fact about the purpose of the note.

[20] 9. This situation, which Barton described, was pleaded by him, defensively, as a reason why the bank should not be allowed recovery in the form sought by it as against him alone. On the trial he offered to prove his allegations, but the court excluded the evidence upon the mistaken idea that action on the demurrers had also cut off proof of the defense. That proof (with the bank's rebuttal, if any) would have determined whether or not the note was unconditionally delivered in extinguishment of the then existent debt. It results that Barton in his answer first showed facts which, if proved, probably would have defeated recovery by the bank in the present form of its suit. And, in the event he was bested in the attempt to prove these facts, and it was found that the note was delivered without condition, his pleading, rightly interpreted, presented, alternatively, his right to relief against Hutto. Patently, then, the question of whether there was an unconditional delivery of the note as extinguishment of the existent debt was presented by the answer on the one hand and the petition on the other, and this, necessarily, was an issue of fact. If the case had been properly tried, and as a result the jury had found against Barton on the issue, this finding would have been tantamount to a finding of "prior payment" (by the giving of the note) by him, and his right to recoupment for part against Hutto would have followed as a matter of course even under the strictest application of the rule announced by the Court of Civil Appeals.

We therefore recommend reversal of the judgments of the district court and of the Court of Civil Appeals and a remand of the cause.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.