MURVYN W. VYE *vs.* WILLIAM A. McKENNEY & another.

Suffolk.    January 8, 1929. — March 26, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction*, Rescission of contract.   *Contract*, Rescission.   *Fraud.*
*Payment.*

As a ground of a suit in equity to rescind an agreement in writing whereby
the defendant, the owner of practically all the capital stock of a cor-
poration, agreed with two employees to sell them his stock, for which
they jointly agreed to pay in instalments, the plaintiff, one of the
employees, relied upon a contention that the defendant, before the
execution of the contract, falsely and fraudulently had represented to
the plaintiff that he and his copurchaser were to stand on an equal
footing as to the purchase and that his copurchaser had agreed to
make an initial payment of $25,000, which was one half of the amount
called for by the contract, whereas, as the defendant knew, the co-
purchaser was not to stand on an equal footing with the plaintiff and
had not agreed to make such initial payment, nor any payment in
money.   A master, to whom the suit was referred, found that the
defendant had taken from the plaintiff $25,000 in cash as his share
of the initial payment, while from the plaintiff's copurchaser he had
taken a note for $10,000 and also had given him credit for an addi-
tional $15,000 without such a payment having been made, and had
given a receipt to the plaintiff acknowledging that he had received
from the plaintiff and from his associate $50,000.   The master found
that the predominating motive of the plaintiff in entering into the
contract was that it would be profitable and would permit from its
profits payment of the entire contract price to the defendant, and
that he was appreciably influenced by a belief that his associate had
agreed to pay $25,000 cash or its equivalent on account of the first
payment, but that he was "of the opinion . . . that [the plaintiff]
would have entered into the contract . . . even if he had anticipated
or been told of a future $10,000 note from . . . [his associate] and
a waiver by . . . [the defendant] as to $15,000 in favor of" his
associate.   There was no finding that the defendant intended to
deceive the plaintiff.   The business did not succeed and, because of
defaults in payments under the contract, the defendant repossessed
himself of the stock.   The bill was dismissed.   *Held*, that
    (1) The findings above quoted in the form of a statement of opinion
by the master were construed by this court to be findings of fact;
    (2) Upon the findings by the master, the representations alleged,
even if otherwise actionable, were not a material inducement to the
execution of the contract by the plaintiff;
    (3) It was immaterial so far as the plaintiff's rights were concerned

whether the defendant had agreed with the plaintiff's associate in advance as to the manner in which his payment should be made;

(4) A promise or representation that a payment of a fixed sum will be made does not necessarily mean that the obligee will require a payment in cash;

(5) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on March 5, 1923, and afterwards amended, seeking rescission of the contract in writing described in the opinion, repayment to the plaintiff of sums he had paid to the defendant McKenney under its provisions, and damages.

In the Superior Court, the suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *Greenhalge,* J., there were entered an interlocutory decree overruling exceptions of both parties to the master's report and confirming the report, except in a particular not material, and a final decree dismissing the bill. The plaintiff appealed.

*Asa P. French,* for the plaintiff, submitted a brief.

*S. R. Wrightington,* for the defendants.

SANDERSON, J. The issue in this suit is whether the contract for the purchase of shares of stock in a business corporation should be rescinded for alleged false representations made by the defendants. A master was appointed, exceptions to his report were overruled, the report was confirmed, and a decree was entered dismissing the bill, from which the plaintiff appealed.

The defendant McKenney was for many years a dealer in electrical and gas fixtures in Boston doing business under the name McKenney & Waterbury Co., Inc. The plaintiff had been employed by a concern dealing in electrical supplies and the defendant Paine, who is referred to as a nominal defendant, had been an employee of McKenney for many years. On February 17, 1921, the parties entered into a written agreement under seal by which McKenney was to cause a corporation to be formed and to turn over to it all the assets and good will of the business of the McKenney & Waterbury Co., Inc. in consideration of the issue to him of all the preferred stock of the corporation and all but four shares of the common stock. Paine and Vye therein agreed

to purchase from McKenney all the stock issued to him for $400,000 "payable as follows: — Fifty Thousand (50,000) Dollars upon the execution of this agreement and a further sum of not less than Fifty Thousand (50,000) Dollars per annum . . . in each . . . successive year" until the purchase price is fully paid. The sole allegation of fraud upon which the plaintiff now relies is, in substance, that, prior to the execution of the contract, the defendant McKenney falsely and fraudulently represented to the plaintiff that the plaintiff and Paine were to stand upon an equal footing as to the purchase of the stock, and that Paine had agreed to make an initial payment of $25,000, whereas in truth and in fact, as McKenney knew, Paine was not to stand on an equal footing with the plaintiff and had not agreed to make such initial payment, nor any payment in money.

The master found that at a conference some weeks before the execution of the agreement, McKenney told the plaintiff and Paine that the plaintiff was to put in $25,000 and Paine an equal amount in some way; that each was to pay McKenney that amount or its equivalent. At a later interview before the execution of the contract, McKenney told the plaintiff that he and Paine were to stand on an equal footing and that Paine had agreed to make an initial payment of $25,000, but the master found that McKenney never told Vye in terms that Paine had paid $25,000 in cash or that he was to make this payment in cash. Before the execution of the contract McKenney and Paine had not agreed that Paine should make his first payment in cash and there was no evidence that they had agreed before that time as to the manner in which Paine's first payment should be made. Soon after the contract was executed, Vye paid McKenney as his part of the initial payment the sum of $25,000 in the form of a treasurer's check. Paine took care of his part of this payment by giving McKenney an unsecured note for $10,000 with interest and by being credited with $15,000 as a gift from McKenney. A receipt in the following form was signed by McKenney and given to Vye: "I hereby acknowledge receipt from Alfred J. Paine and Murwyn W. Vye of the first payment of Fifty Thousand Dollars ($50,000) called

for by their agreement with me dated February 17th, 1921."
Vye did not know the manner in which Paine contributed
his share of the initial payment until February, 1923, when,
in reply to his inquiry, McKenney gave him this information.
After the agreement was made, McKenney turned the man-
agement of the business over to Vye and Paine.   They ex-
pected to earn enough in the business to make the annual
payments, but the earnings fell off and no payments after
the first were made on the contract.   On March 1, 1923,
McKenney took possession of the business because of these
defaults.   Vye then demanded repayment of the $25,000
contributed by him, and soon after brought this suit.

The plaintiff believed when he signed the contract that its
terms accurately stated the understanding of the parties as
to the first payment to be made.   He also believed that
McKenney would receive $50,000 in cash or its equivalent, of
which sum Vye and Paine were each to pay one half.   The
master found in substance that the predominating motives
and reasons which caused Vye to enter into the contract were
the expectation that the business would be profitable so that
ultimately the stock would be paid for from the earnings,
but that Vye was appreciably influenced to enter into the
contract because he believed that Paine had agreed with
McKenney before its execution to pay $25,000 on account
of the first payment; that he was also "of the opinion, if it is
material, that Vye would have entered into the contract of
February 17, 1921, even if he had anticipated or been told
of a future $10,000 note from Paine and a waiver by Mc-
Kenney as to $15,000 in favor of Paine."   He found there
was nothing in the evidence to warrant a belief that Mc-
Kenney would have made with Vye, for his first payment, an
arrangement similar to that made with Paine, and there is
no finding that McKenney intended to deceive the plaintiff.
The findings in the form of a statement of opinion by the
master we construe to be findings of fact.

Whatever significance may be given to the finding that
Vye was appreciably influenced to enter into the contract
because of his belief as to Paine's agreement with McKenney,
it could not in law amount to a fraudulent inducement thereto

if the plaintiff would have entered into the contract if no such statement had been made. *Matthews* v. *Bliss*, 22 Pick. 48, 53. *Hartford Live Stock Ins. Co.* v. *Matthews*, 102 Mass. 221, 225. The representations alleged need not be the sole inducement to the plaintiff's act, but they must be a material inducement or influence thereto. *Safford* v. *Grout*, 120 Mass. 20. *Strong* v. *Strong*, 102 N. Y. 69, 74, 75. Upon the findings the representations alleged, even if otherwise actionable, were not a material inducement to the execution of the contract by the plaintiff.

According to the terms of the contract the plaintiff and Paine obligated themselves to make a first payment of $50,000 on account of the purchase price. The agreement did not further state how the payment was to be made. The plaintiff had paid his half of the first instalment and Paine had in legal effect contributed the other half by causing a credit against the purchase price of a sum equal to that paid by the plaintiff, and the plaintiff's interest in the corporation and his rights under the contract were the same as they would have been if Paine had paid $25,000 in cash. The net result was a reduction of $50,000 in the indebtedness, and the balance due was just what the plaintiff understood it would be after the first payment had been made. It is immaterial so far as the plaintiff's rights are concerned whether McKenney received the whole of the first payment in cash or whether he had agreed with Paine in advance as to the manner in which his payment should be made. The parties stood on an equal footing in the sense that each had caused the total indebtedness to be reduced by $25,000. A promise or representation that a payment of a fixed sum will be made does not necessarily mean that the obligee will require a payment in cash. *Amos* v. *Bennett*, 125 Mass. 120, 123. See *National Wholesale Grocery Co. Inc.* v. *Mann*, 251 Mass. 238, 250. The findings of fact were made upon evidence not reported and it does not appear that the material findings were necessarily inconsistent with each other or clearly wrong. *McNamara* v. *Consolidated Hotels Corp.* 243 Mass. 22, 24.

*Interlocutory and final decrees*
*affirmed with costs.*